COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and McClanahan
Argued at Charlottesville, Virginia


WALLACE LEWIS JUDD, JR.
                                                            OPINION BY
v.        Record No. 1705-08-4                    JUDGE LARRY G. ELDER
                                                          MARCH 24, 2009
JUDITH HASE JUDD


            FROM THE CIRCUIT COURT OF CULPEPER COUNTY
                     J. Howe Brown, Jr., Judge Designate

         Robin C. Gulick; John C. Clark (T. Huntley Thorpe, III; Gulick,
         Carson and Thorpe, P.C., on briefs), for appellant.

         Kyra F. Howell (The Howell Law Firm, PLLC, on briefs), for
         appellee.


        Wallace Lewis Judd, Jr., (husband) appeals from a divorce and equitable distribution

order in which the court granted Judith Hase Judd (wife) permission to move the parties' two

children with her to Wisconsin and awarded wife the entire marital share of her pension. On

appeal, husband contends both these rulings were erroneous.[1] We disagree and affirm.

                                             I.

                                      BACKGROUND

        "We review the evidence in the light most favorable to [wife], the party prevailing below,

and grant . . . all reasonable inferences fairly deducible from the evidence viewed in that light."

---

        [1] Husband asked this Court to stay the trial court's decision approving wife's relocation
with the parties' children to Wisconsin until this appeal was resolved. Because we conclude the
trial court did not err in granting wife's request to relocate with the children to Wisconsin, we
need not address father's request for a stay of the relocation pending appeal.

Goodhand v. Kildoo, 37 Va. App. 591, 595, 560 S.E.2d 463, 464 (2002). The evidence, so viewed, established the following:

The parties were married in 1998 and had two sons. They separated in 2005 but continued to reside in the same house in Amissville, Virginia.

On May 11, 2007, wife filed a complaint for divorce based on a one-year separation and requested equitable distribution of the parties' property and sole custody of the parties' children, who were 3 and 5 years old at the time. The complaint also stated wife's "desire[] to relocate to Wausau, Wisconsin, with the parties' minor children." Husband filed an Answer in which he objected to wife's request for permission to relocate to Wisconsin with the boys.

Wife subsequently moved the court for *pendente lite* relief, and the parties entered into a consent order. Pursuant to Code § 20-124.5, the consent order included the term that each party was required to provide thirty days advance written notice to the other party of any intended change of address, including "the specific street, route address, city or county, state and zip code of the intended new address." In compliance with the *pendente lite* order, wife notified husband and the court that she intended to move with the parties' children to Warrenton, Virginia, on August 1, 2007, and included her street address. Wife and the parties' children continued to reside at the Warrenton address at the time of the divorce hearing on April 28, 2008.

At that hearing, the parties testified and offered evidence about the boys' relationships with both parents. When wife's counsel announced the intention to question wife about "one of the major issues that [she] filed with [her] complaint," her desire to relocate to Wisconsin, husband's counsel moved to exclude evidence of wife's desire to relocate, claiming the *pendente lite* order required any party wishing to relocate to give thirty days notice of that intent under Code § 20-124.5. Wife's counsel argued the filing of wife's complaint, in which she indicated her desire to move to Wisconsin with the children, gave adequate notice of her intention. When

the trial court asked wife for her new address in Wisconsin, wife said, "I can give you a general address," and the trial court responded, "Well, I mean the statute requires it. . . . [W]hat you're asking me to do, really, is to give an advisory opinion." Wife's counsel argued wife did not want to give 30 days notice "until she has heard from the Court. My understanding of the case law is that it can be done either way." Over husband's objection that he was entitled to notice and that "advisory opinions aren't constitutional," the trial court ruled as follows:

> I think it is sensible to do it this way because [wife], from the very start, has said that's what she wants to do. For judicial economy, it behoves [sic] the Court to do it this way. If we don't, . . . what it really means is that a party has to arrange for a place to live, arrange for things to be moved, say they're going to move, and then give 30 days notice, and you won't get to court in 30 days, not here, not now, you know, because of the docket of this Court and a new judge coming on in August and all that. So it would just really screw up the docket. I realize that's probably not a reason to step on the constitution or anything of that nature, but she's made it clear that she wants to move from the very start, and I think today is an appropriate day to decide . . . .

Wife then offered evidence about her family in Wausau, Wisconsin, and described how she thought the boys would benefit from moving there and what efforts she intended to take to see that the boys maintained a relationship with their father. She also offered evidence regarding the relatively limited role husband played in the children's lives. Husband disputed wife's testimony concerning his relationship with the boys and averred he had always been an active, involved parent.

The parties also offered evidence concerning their property and additional relevant factors for equitable distribution under Code § 20-107.3.

The trial court ruled that wife had proved "the move will not substantially impair the [boys'] relationship with [husband]" and that relocation to Wisconsin with wife was in the boys' best interests. It established a detailed visitation schedule and provided that all regularly

scheduled visitation would occur in Virginia at wife's expense. On the issue of equitable distribution, the trial court ruled as follows:

> He has an IRA which is solely separate. I think it was worth about 27,000 or something like that. But anyway, his IRA is solely separate, so the Court makes no ruling with regard to that.
>
> She has a pension, the marital value of which is about $28,000. Now, lots of other things are going to happen in a minute [with regard to equitable distribution], but I think she made more monetary and nonmonetary contributions for the benefit of the family. While he brought this [real] property into the marriage, in a moment he's going to get credit for it . . . .
>
> She was the main caregiver. She earned more. She did . . . a lot of things to make the family go while he was out doing whatever he was doing on Saturdays . . . so I think she should keep her pension. That's a small enough nod to her greater contribution in that respect.

On May 13, 2008, about 15 days after the court's bench ruling, wife sent husband a notice of intended change of address, listing a particular street address in Wausau, Wisconsin, to take effect as of July 15, 2008.

Husband asked the trial court to stay wife's planned relocation until he could appeal the final decree's approval of the relocation request to the Court of Appeals and obtain a ruling on that appeal. The trial court held a hearing on the request for stay on June 23, denied the motion, and entered the final decree.

Husband then noted this appeal.

- 4 -

II.

ANALYSIS

A.

RELOCATION TO WISCONSIN

1. Receipt of Testimony and Rendering of a Decision Regarding Relocation

Husband contends the trial court erred in allowing wife, at the evidentiary hearing on her complaint for divorce and equitable distribution, to offer evidence about her desire to relocate to Wisconsin with the parties' two sons. This was error, he contends, because wife's failure to file a notice of that intent and failure to list her "specific . . . intended new address" violated Code § 20-124.5 and the related notice provision in the *pendente lite* order. Thus, he avers, the admission of evidence relating to the relocation request was error and the ruling authorizing relocation amounted to a constitutionally prohibited advisory opinion. We hold the trial court's admission of the challenged testimony and resolution of the relocation request in the final decree was not error.

It is undisputed that in wife's complaint for divorce filed May 11, 2007, she sought custody of the parties' minor children and specifically stated her "desire[] to relocate to Wausau, Wisconsin, with the parties' minor children." Husband filed an Answer in which he objected, *inter alia*, to wife's request for permission to relocate with the children. He stated that relocating to Wausau, Wisconsin, was not in the children's best interests, and he did not state that the relocation request could not be resolved because wife had not listed the particular street address to which she desired to move. Thus, husband had notice of wife's intent, if necessary, to litigate the relocation request as part of the divorce proceeding,[2] and wife had no notice of husband's

_____

[2] Husband did not contend at trial that the court's deciding to hear the issue prejudiced him in any way. He claimed only that allowing the evidence violated the statutory notice provisions as set out in the *pendente lite* order and constituted an advisory opinion.

intent to object to the litigation of that issue on the ground that wife had not yet provided a specific street address for the desired relocation.

Further, neither Code § 20-124.5 nor the related notice provision in the *pendente lite* order prevented litigation of the relocation request in the divorce proceedings. Code § 20-124.5 provides in its entirety as follows:

> In any proceeding involving custody or visitation, the court shall include as a condition of any custody or visitation order a requirement that thirty days' advance written notice be given to the court and the other party by any party intending to relocate and of any intended change of address, unless the court, for good cause shown, orders otherwise. The court may require that the notice be in such form and contain such information as it deems proper and necessary under the circumstances of the case.

This statute speaks directly to the written notice provision required to be included in any custody or visitation order. In the instant case, no such order existed when wife filed her complaint for divorce, custody, and permission to relocate.

Assuming without deciding the notice provisions of Code § 20-124.5 became applicable to wife's previously filed request to relocate upon the inclusion of the notice language in the *pendente lite* order, the statute expressly recognizes that *a court may, "for good cause shown," modify the notice requirement so as to accept "notice . . . in such form and contain[ing] such information as it deems proper and necessary under the circumstances of the case*." Code § 20-124.5 (emphasis added). The trial court implicitly found good cause for considering wife's request to relocate as part of the April 28, 2008 hearing on the merits of wife's complaint for divorce and equitable distribution, and we hold the evidence, viewed in the light most favorable to wife, supports that finding. The trial court found the approach "sensible" and noted "the other cases seem to say that the court does exactly what it's doing here and make[s] the decision [about whether to permit relocation] in advance of the formal notice." The court observed that not allowing such an approach would put the parent desiring to move in a "Catch-22" situation,

requiring that parent to "get a house, get a job, and do all these things, and then come[] to court and say now can I move having done all these things? And if the court says no, then they're stuck."

This approach did not leave husband without a remedy for objecting to the particular address to which wife moved on the facts of this case. Although the court determined that allowing wife to move to Wausau, Wisconsin, with the parties' two sons was in the children's best interests, it still required wife to provide husband with "the required 30-day notice upon the actual move." Wife provided husband with this notice 15 days after the hearing and more than 60 days prior to her actual move. Thus, husband had ample time to challenge the particular street address but opted not to do so.

The trial court's ruling as a result of the April 28, 2008 hearing did not constitute an advisory opinion any more than would any ruling made in advance of an actual move, and policy considerations supported the court's decision to address the relocation issue in the divorce and custody hearing. As we have previously recognized, no statute sets out the standards under which permission to relocate should be granted or denied. See Petry v. Petry, 41 Va. App. 782, 789, 589 S.E.2d 458, 462 (2003). We have reasoned that "the relocation issue is best understood under traditional constructs governing custody and visitation" and, thus, that the best interests standard governs. Id. at 789-90, 589 S.E.2d at 462. Because both the custody and relocation determinations are governed by a best interests standard, considering both issues in one proceeding serves judicial economy, as the trial court expressly recognized.

Thus, we conclude the trial court did not abuse its discretion in accepting evidence and ruling on the relocation request as part of the April 28, 2008 proceeding.

## 2. Sufficiency of the Evidence to Permit Relocation

"In a court's decision as to the propriety of relocating the children . . . , 'the welfare of the children is of primary and paramount importance.'" Parish v. Spaulding, 26 Va. App. 566, 572, 496 S.E.2d 91, 94 (1998) (quoting Simmons v. Simmons, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986)), aff'd, 257 Va. 357, 513 S.E.2d 391 (1999); see Code § 20-124.3 (delineating the factors to be weighed in assessing the best interests of children in custody and visitation matters); see also Cloutier v. Queen, 35 Va. App. 413, 427, 430, 545 S.E.2d 574, 581, 582-83 (2001) (holding that the Code § 20-124.3 factors govern whether relocation is in a child's best interests and that the interests to be assessed are solely the child's and do not include the custodial parent's interests). "[T]he added difficulty in maintaining a beneficial relationship between a child and a non-custodial parent should not be the sole basis for restricting a custodial parent's residence except where the benefits of the relationship cannot be substantially maintained if the child is moved away from the non-custodial parent." Scinaldi v. Scinaldi, 2 Va. App. 571, 575, 347 S.E.2d 149, 151 (1986). The moving party bears the burden of proving that the relocation will not "substantially impair[]" the relationship between the children and the other parent. Stockdale v. Stockdale, 33 Va. App. 179, 184, 532 S.E.2d 332, 335 (2000). "We review the evidence in the light most favorable to [wife], the party prevailing below, and grant . . . all reasonable inferences fairly deducible from the evidence viewed in that light." Goodhand, 37 Va. App. at 595, 560 S.E.2d at 464. The trial court's decision regarding the relocation of a custodial parent "'is a matter of discretion,'" and on appeal, we will not reverse that decision "'unless plainly wrong or without evidence to support it.'" Sullivan v. Knick, 38 Va. App. 773, 783, 568 S.E.2d 430, 435 (2002) (quoting Bostick v. Bostick-Bennett, 23 Va. App. 527, 533, 478 S.E.2d 319, 322 (1996)).

Husband contends wife failed to meet her burden of proving relocation would not substantially impair his relationship with the parties' children and that the move was in the children's best interests. We hold the evidence, viewed in the light most favorable to the party prevailing below, supports the trial court's ruling.

Code § 20-124.3(5) requires the trial court to consider "[t]he role which each parent *has played* and will continue to play in the future, in the upbringing and care of the child." (Emphasis added.) As we have previously recognized, the role the non-custodial parent has previously played in the children's lives is relevant to assessing whether the requested relocation will "substantially impair[]" the relationship between the children and the other parent. Petry, 41 Va. App. at 792-93, 589 S.E.2d at 463-64. Although husband contended he had played an active role in the children's lives since their birth, wife's evidence was that husband exhibited little to no interest in spending time with his sons until he learned wife was keeping a detailed log of his behavior toward the children and was planning to file for divorce. See id. (where the trial court found that prior to the parties' separation "husband had 'abdicated to a great extent' his parental duties," holding husband's "prior history of parental disinterest" was a proper factor for consideration in assessing whether relocation would substantially impair husband's relationship with the children).

The trial court expressly observed wife bore the burden of proving the relocation would not substantially impair the boys' relationship with husband. It noted that although "[husband] has participated in home schooling the older boy and has increased his participation with both children, *that's really recent history*." (Emphasis added.) The trial court then ruled, implicitly if not explicitly, that the move would not substantially impair husband's prior relationship with the boys because wife was the main caregiver and "the other kinds of things that [husband] has done with the children can be arranged in expanded visits that will take place on a less frequent basis."

The evidence, viewed in the light most favorable to wife, supports this finding. The trial court found wife was "committed to encouraging visits with the [husband]." It established a detailed visitation schedule for the children, including four weeks during the summer, and ordered that wife be responsible for the cost of transporting the children to and from Virginia so that this burden would not fall on husband.

The evidence as a whole also supports the trial court's finding that the move was in the best interests of the children, who were 4 and 6 years old at the time of the hearing. The trial court found that upon moving to the small town of Wausau, Wisconsin, wife, who had always been the primary caretaker for the children, "will have more time with the children by avoiding the killer commute that she has now." Additional evidence established that wife's ability to work a flexible schedule at her job in Virginia and to maintain any sort of employment with that company were both in jeopardy as a result of her boss' impending departure. Wife, who was not college educated, testified that the cost of living in Wausau was significantly lower than in Virginia and that she would more easily be able to earn enough money to support herself and the children there than in Virginia.

The evidence supported a finding that wife's extended family, including her parents, three brothers, one sister,[3] and their families, all resided in Wausau, Wisconsin. The trial court also found that the children were "of an age and stage in life where they have not developed ties to friends and places in Virginia such that a move will be difficult for them," and noted that because "they've visited Wisconsin and have a sense of place and person there, . . . it's not an unfamiliar place or unfamiliar people to them." See id. at 793-94, 589 S.E.2d at 464 (noting that

---

[3] The evidence was that wife's sister was residing in Virginia at the time of the hearing but would be moving back to Wausau, Wisconsin, six months later.

a child's familial and other contacts in, and number of prior visits to, an area are relevant to determining whether a move there is in a child's best interests). It explained further that

> [t]he kids' lives [in Wausau, Wisconsin,] will be more community-oriented. They will have a smaller area where they will be concentrated with her work and their schooling and playmates and friends and that kind of thing. She indicates they will be able to attend private school [at wife's expense], which both parents want and which is not affordable in Virginia but is in Wisconsin. They'll have extensive contact with cousins of similar age and with other maternal relatives and other children as well, . . . [in] school.

The evidence showed that the children's family ties in Virginia, other than husband, consisted only of their paternal grandparents and that, although these grandparents helped care for the boys from time to time, the boys were "not that close" to them.

This evidence supported the trial court's finding that allowing wife to move with the boys to Wausau, Wisconsin, was in the boys' best interests.

B.

EQUITABLE DISTRIBUTION OF WIFE'S PENSION

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge . . . ." Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). Although the trial court must consider all factors set out in Code § 20-107.3(E), it "need not quantify or elaborate exactly what weight was given to each of the factors" as long as its "findings . . . [are] based upon credible evidence." Taylor v. Taylor, 5 Va. App. 436, 444, 364 S.E.2d 244, 249 (1988). "Virginia law does not establish a presumption of equal distribution of marital assets." Matthews v. Matthews, 26 Va. App. 638, 645, 496 S.E.2d 126, 129 (1998); see Robbins v. Robbins, 48 Va. App. 466, 480, 632 S.E.2d 615, 622 (2006) (affirming circuit court's use of "a 65/35 division of assets"). Further, "[e]ach marital asset is not necessarily entitled to be treated the same for purposes of equitable distribution." Gamer v. Gamer, 16 Va. App. 335,

- 11 -

344, 429 S.E.2d 618, 624 (1993). How to divide the marital share of wife's retirement account, "as with any other asset, rested within the sound discretion of the chancellor, subject to the limitations of Code § 20-107.3(G) and upon consideration of the Code § 20-107.3(E) factors." Torian v. Torian, 38 Va. App. 167, 181, 562 S.E.2d 355, 362 (2002).

The evidence, viewed in the light most favorable to wife, supported the trial court's award to wife of all of her retirement account of $27,949.14. The evidence supported the trial court's finding that wife's income during the marriage was greater than husband's and that wife's nonmonetary contributions to the marriage were more significant, as well. In addition to maintaining employment outside the home, wife was the primary caretaker for the couple's children throughout the marriage. Finally, husband concedes the trial court evenly divided the marital portion of the parties' most significant marital assets, their real estate holdings.

On these facts, we hold the trial court's decision to award wife 100% of the marital share of her pension was not an abuse of discretion.

### III.

For these reasons, we hold the trial court did not err in granting wife permission to move the parties' two children with her to Wisconsin and awarding wife the entire marital share of her pension. Because we resolve the relocation issue in wife's favor, we do not reach the issue of our authority to grant husband's request for a stay of the relocation pending the outcome of this appeal.

Affirmed.